UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| WALTER FAUSSETT, | : |
| | : |
| *Plaintiff*, | : |
| | : |
| v. | : Civil No. 3:18cv738 (MPS) |
| | : |
| ANDREW SAUL, | : |
| COMMISSIONER OF SOCIAL | : |
| SECURITY, [1] | : |
| | : |
| *Defendant*. | : |

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

The plaintiff, Walter Faussett, brings this appeal under 42 U.S.C. § 405(g) from the Social Security Commissioner's denial of his application for Title II disability insurance benefits. The plaintiff moves to reverse the Commissioner's decision or alternatively remand for a new hearing. (ECF #44.) The Commissioner in turn moves to affirm the decision. (ECF #52.) For the reasons that follow, the plaintiff's motion to remand is granted and the defendant's motion to affirm is denied.

I assume the parties' familiarity with Mr. Faussett's medical history (summarized in a stipulation of facts filed by the parties, ECF ##45 and 53, which I adopt and incorporate herein by reference), the ALJ's opinion, the record, and the five sequential steps used in the analysis of disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

---

[1] The plaintiff commenced this action against Nancy A. Berryhill, as Acting Commissioner of Social Security. Since the filing of the case, Andrew Saul has been appointed the Commissioner of Social Security, and he is substituted as the defendant pursuant to Fed. R. Civ. P. 25(d).)

I.  Legal Standard

"A district court reviewing a final . . . decision pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). As such, the Commissioner's decision "may be set aside only due to legal error or if it is not supported by substantial evidence." *Crossman v. Astrue*, 783 F. Supp. 2d 300, 302–03 (D. Conn. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal quotation marks and citation omitted). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

II.  Background

The plaintiff appeared *pro se* at the November 2016 administrative hearing. He testified that while working as a mason tender on a construction site, he injured his back and ankle. He subsequently suffered chronic pain and limitations in standing, lifting, walking, and sitting. (R. at 44, 46, 48, 49, 59.) The ALJ observed that medical records from many of the plaintiff's providers were missing. (R. at 35.) The ALJ explained that after the hearing, she would request the plaintiff's records from the various treaters. In March 2017, the ALJ sent the plaintiff a letter informing him that she had obtained additional evidence to enter into the record and attached the records. (R. at 213.) The ALJ advised the plaintiff that he could respond to the evidence and/or request a supplemental hearing. The letter went on to explain that if the plaintiff did not respond, the ALJ would "enter the new evidence in the record and issue [her] decision." (R. at 214.) The plaintiff did not respond. The ALJ thereafter supplemented the record with the records and on May 1, 2017, issued an unfavorable decision. Specifically, the ALJ found that the plaintiff suffered from

lumbar degenerative disc disease with radiculopathy and tibial tendinosis of the left ankle, status post surgery, which, although severe, did not meet any of the listed impairments. (R. at 12-13.) The ALJ determined that the plaintiff retained the residual functional capacity ("RFC") to perform sedentary work[2] with certain functional limitations.[3] (R. at 14.) The ALJ concluded that the plaintiff was unable to perform his past relevant work as a construction masonry helper but found that there was other work that the plaintiff could perform. The ALJ therefore concluded that the plaintiff was not disabled.

III.    Discussion

Among other things, the plaintiff argues that the case should be remanded for a new hearing because the ALJ failed to properly develop the administrative record. I agree.

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000). "[T]he social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks and citation omitted). "[W]hen the claimant is unrepresented, the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant

---

[2]Sedentary work "generally involves up to two hours of standing or walking and six hours of sitting in an eight-hour workday." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). *See* 20 C.F.R. § 404.1567 (Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.")

[3]Those functional limitations were that Mr. Faussett could occasionally balance, kneel, stoop, crouch, crawl, and climb ramps or stairs; never climb ladders, ropes or scaffolds; must avoid workplace hazards such as unprotected heights and dangerous moving machinery and not push, pull, or operate foot controls with the bilateral lower extremities. (R. at 14.)

3

facts . . . ." *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (internal quotation marks and citations omitted).

"Whether an ALJ has satisfied h[er] obligation to develop the record 'must be addressed as a threshold issue.'" *Caruso v. Saul*, No. 3:18CV1913(RMS), 2019 WL 5853527, at *4 (D. Conn. Nov. 8, 2019)(quoting *Downes v. Colvin*, No. 14-CV-7147(JLC), 2015 WL 4481088, at *12 (S.D.N.Y. July 22, 2015)). "Even if the ALJ's decision might otherwise be supported by substantial evidence, the Court cannot reach this conclusion where the decision was based on an incomplete record." *Moreau v. Berryhill*, No. 3:17CV396(JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) (internal quotation marks and citation omitted). *See Alford v. Saul*, __ F. Supp.3d ___, 2019 WL 4744931, at *11 (D. Conn. Sept. 30, 2019)("An ALJ's ultimate conclusions might not change following adequate development of the record. Even so, a plaintiff is always entitled to a decision based on a fully developed record.")

The plaintiff asserts that the ALJ erred in determining the plaintiff's RFC without the benefit of a medical source statement from any of the plaintiff's physicians regarding how his "impairments affect his ability to work." (ECF 44-1 at 7.) The defendant responds that the ALJ did not err because she "supplement[ed] the record in a manner within her discretion" and despite notice and opportunity, the plaintiff did not identify "deficiencies for the ALJ to address." (ECF 52-1 at 5.)

A medical source statement is a statement about a claimant's "ability, despite . . . impairment(s), to do work-related activities such as sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling." 20 C.F.R. § 404.1513(c)(1)(2016).[4] The

---

[4]The Social Security Administration revised some of its regulations in 2017 but the new regulations apply to claims filed on or after March 27, 2017. Smith v. Comm'r, 731 F. App'x 28,

4

Social Security Administration "will request a medical source statement about what you can still do despite your impairment(s)." 20 C.F.R. § 404.1513(b)(6)(2016). However, an ALJ's failure to obtain a medical source statement before making a disability determination does not require remand where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013). *See Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) ("[T]his Court does not always treat the absence of a medical source statement from claimant's treating physicians as fatal to the ALJ's determination . . . .")

The court in *Tankisi* determined that remand was not warranted because the "medical record assembled by the claimant's counsel," although lacking "formal opinions on [the petitioner's] RFC from her treating physicians," contained "an assessment of [the petitioner's] limitations from a treating physician" sufficient to permit the ALJ to make an "informed finding." *Tankisi*, 521 F. App'x at 34. *But see Guillen v. Berryhill*, 697 F. App'x 107, 108–09 (2d Cir. 2017)(remand was warranted because "[u]nlike *Tankisi*, the medical records obtained by the ALJ do not shed any light on [the *pro se* claimant's] residual functional capacity . . . . The medical records discuss [the claimant's] illnesses and suggest treatment for them but offer no insight into how her impairments affect or do not affect her ability to work . . . .")

The determination of whether an administrative record is incomplete without a medical source statement is "made on a case-by-case basis, depending on the circumstances of the particular case, the comprehensiveness of the administrative record," and whether the record is "sufficiently comprehensive to permit an informed finding by the ALJ." *Lamboy v. Comm'r of*

---

30 n.1 (2d Cir. 2018) (summary order). Because the plaintiff filed for disability benefits before the date the changes became effective, his claim is governed by the prior regulations.

*Soc. Sec.*, No. 16 Civ. 1197(ER), 2017 WL 3493250, at *7 (S.D.N.Y. Aug. 15, 2017)(quoting *Sanchez v. Colvin*, No. 13 Civ. 6303(PAE), 2015 WL 736102, at *5–6 (S.D.N.Y. Feb. 20, 2015)). *See DeLeon v. Colvin*, No. 3:15CV1106(JCH), 2016 WL 3211419, at *4 (D. Conn. June 9, 2016)("Often, [r]ecords that are deemed to be complete without a medical source statement from a treating physician contain notes that express the treating physician's views as to the claimant's residual functional capacity . . . .")

In this case, the records of the plaintiff's treating physicians, <u>i.e.</u>, Dr. Pappas, Dr. Perper, and Dr. Yager, discuss the plaintiff's symptoms, diagnoses, and treatment plan, including referrals to other providers. But they do not clearly address the plaintiff's ability, despite his impairments, to do work-related activities. and to the extent they discuss his ability to work at all, they do not provide meaningful support for the particular capabilities described by the ALJ's RFC determination.

Dr. Pappas, a physiatrist, noted in February 2014 that the plaintiff reported persistent lower back pain and left ankle pain, was limping, had decreased range of motion in lumbar flexion and extension, and "give-way weakness." (R. at 152) He referred the plaintiff to physical therapy. (R. at 150.) When seen in March 2014, the plaintiff continued to report pain in his lower back and left ankle/foot. Notes indicate that he had decreased lumbar range of motion and normal muscle strength in lower extremities with the exception of his right hip. (R. 224-25.) Electrodiagnostic testing was consistent with radiculopathy down the right leg. (R. at 221.) April 2014 treatment notes state that the plaintiff continued to experience lower back and ankle pain, had pain to palpation along the lower lumbar paraspinal musculature, used a cane, and had an antalgic gait. (R. at 222.) In June 2014, Dr. Pappas observed that the plaintiff had "restrictions of range of motion in lumbar flexion and extension" and "pain with ankle dorsiflexion and plantar flexion."

He recommended that the plaintiff see a spine surgeon "as he continues to have persistent pain despite extensive physical therapy." (R. at 162.) Dr. Pappas' notes state that the plaintiff "remains disabled. He works in construction and is not able to do so at this time." (R. at 163.) Treatment notes from September and December 2014 state that the plaintiff continued to report pain, had an antalgic gait, had decreased range of motion in lumbar flexion and extension, and used a cane. (R. at 217, 385.) Dr. Pappas recommended that the plaintiff see a pain management specialist. (R. at 217.) Subsequent notes indicate that the plaintiff had an improved range of motion in his left ankle but continued to have lower back pain. (R. at 389, 393, 405.)

In addition to Dr. Pappas, the plaintiff was treated by Dr. Perper, a pain management specialist. When seen in April 2014, the plaintiff complained of back and ankle pain and used a cane. (R. at 235.) He had a positive straight leg raise test on the right. Notes from October 2014, December 2014, and January 2015, state that the plaintiff had lower back pain, diffuse lumbrosacral tenderness, normal muscle tone and strength in lower extremities, a positive straight leg raising test on the right, and was able to "bear weight on the left ankle with significant pain." Crepitus was heard with movement of the left ankle. (R. at 238, 356, 453.) The January note states, without elaboration, that "[d]ue to prolonged pain patient remains totally disabled from work." (R. at 357.) In February 2015, Dr. Perper noted that the plaintiff used a cane and had a "broad based gait." (R. at 358-61.) Dr. Perper treated the plaintiff with medication including Mobic and Neurontin and with steroid injections in both his ankle and his back. (R. at 237, 362, 359, 460.)

The plaintiff also was treated by Dr. Yager, a podiatrist. Dr. Yager's March 2014 note indicated that the plaintiff complained of pain in his left ankle, which was swollen, and that he used a cane. His range of motion was "very painful allowing for 15 degrees of dorsiflexion, 30

7

degrees of planar flexion, pain upon end range of motion." (R. at 242.) Dr. Yager stated that the plaintiff "remains disabled." (R. at 243.) Notes from May and June 2014 state that the plaintiff continued to present with pain and tenderness in his left foot and ankle and that his range of motion had not improved. (R. at 231-32.) In September 2014, Dr. Yager performed a left ankle arthroscopy with extensive debridement, chondroplasty, and synovectomy. (R. at 344.) In November 2014, Dr. Yager noted mild swelling and stated that the plaintiff should continue physical therapy. (R. at 311.)

Dr. Pappas, Dr. Perper, and Dr. Yager completed several forms entitled "Doctor's Progress Report[s]" for the New York State Workers Compensation Board. These assessments appear to be made in the context of the plaintiff's employment in the construction industry. On the form, the treaters checked off boxes indicating that (1) the workplace incident was the cause of the plaintiff's injury/illness; (2) the plaintiff's complaints were consistent with the history of the injury/illness; and (3) the plaintiff's history of the injury/illness was consistent with objective findings. In response to a question as to the "percentage (0 to 100%) of temporary impairment," each answered "100%." (*See, e.g.*, R. at 421, 498, 500, 635.) Dr. Pappas went on to state on some of the forms that the plaintiff "cannot return to work" because he was "unable to lift/stand or walk for prolonged periods" (R. at 421, 468, 516, 528); and on others, because he was "unable to stand/bend/lift for prolonged periods." (R. at 602, 607, 613.) On one form, Dr. Pappas stated that the plaintiff "cannot return to work" because he could not "perform any heavy laborious activities." (R. at 564.)

In determining the plaintiff's RFC, the ALJ discounted Dr. Pappas, Dr. Perper, and Dr. Yager's opinions that the plaintiff was disabled because that determination was an "issue reserved to the Commissioner." (R. at 17-18.) The ALJ appeared to credit Dr. Pappas's findings of an antalgic gait and his "opinion of [plaintiff's] inability to stand or walk for prolonged periods." (R.

8

at 17.) As for Dr. Perper, the ALJ stated that his notes "indicate tenderness, crepitus, and limited range of motion in the left ankle supporting significant work-related limitation[s]." (R. at 17.) The ALJ noted that Dr. Yager did not indicate "the areas in which the claimant has work-related limitation[s]" and assigned his opinion little weight. (R. at 18.)

The ALJ also had before her an orthopedic examination by Dr. Shtock, an SSA consultant. Dr. Shtock opined that the plaintiff suffered from limitations in his ability to squat, kneel, sit for long periods, lift, crouch, bend, walk long distances, and stand for long periods. (R. at 319.) The ALJ discounted the opinion on the grounds that Dr. Shtock's assessment was "somewhat vague" because the terms he used to assess the plaintiff's functional limitations – mild, moderate, marked – were undefined. (R. at 17.) The ALJ further stated that "the descriptions of only mild swelling to the ankle in December 2015 are not consistent with the extent of limitations in sitting that Dr. Shtock describes." (R. at 17.)

Finally, the ALJ had the results of an examination for workers compensation purposes by Dr. Lopez, a consultant. Dr. Lopez assessed a disability rating and summarily stated that the plaintiff was "fit for desk work only." (R. at 340.) The ALJ accorded Dr. Lopez's opinion "significant weight" in concluding that the plaintiff retained the RFC for sedentary work. (R. at 18.)

Unlike *Tankisi*, the record here is not adequate for the ALJ to make an "informed finding" regarding the plaintiff's RFC. *Tankisi*, 521 F. App'x at 34. The records of his treating physicians do not contain specific functional assessments that are consistent with the RFC. They do not indicate how long the plaintiff can sit, stand, or walk. Although Dr. Shtock opined as to the plaintiff's work-related abilities, the ALJ discounted his opinion. The conclusory, one-line assertion by Dr. Lopez, made in the context of a workers compensation claim, that the plaintiff

was "fit for deskwork only," is insufficient to support the finding that the plaintiff retained the ability to sit for a prolonged period and walk or stand for up to two hours as required for sedentary work.

Under the circumstances of this case, where the ALJ is under a heightened duty to ensure that the record is sufficiently developed and there is little information as to what treating sources thought about Mr. Faussett's functional capacity and even less information suggesting that medical sources held opinions supporting the specific capabilities described in the RFC, I conclude that the ALJ failed to adequately develop the record. Although, as the defendant points out, the ALJ requested the plaintiff's medical records, a gap remained where she had treatment notes and test results but no assessment of the plaintiff's functional abilities and limitations. The defendant's argument that the ALJ did not err because the plaintiff failed to alert the ALJ that the record was deficient, ECF #52-1 at 5, misapprehends the ALJ's duty to develop the record.

Remand is warranted to permit the ALJ to obtain medical source statements regarding the plaintiff's functional limitations. *See, e.g., Moreau v. Berryhill*, No. 3:17CV396(JCH), 2018 WL 1316197, at *8 (D. Conn. Mar. 14, 2018)(remand warranted where the record did not contain any "RFC assessment by a treating physician on which the ALJ could have relied in making an RFC determination and is therefore less complete than the record in *Tankisi*"); *Delgado v. Berryhill*, No. 3:17CV54(JCH), 2018 WL 1316198, at *10 (D. Conn. Mar. 14, 2018)(remanding case where the record was "not sufficiently robust to have enabled the ALJ to make an informed opinion as to the physical aspects of [the plaintiff's] RFC without a treating source opinion" and "the absence of a complete and reliable functional assessment of [the plaintiff's] physical limitations is an obvious gap warranting remand"); *Tricic v. Astrue*, No. 6:07-CV-9997 NAM/GHL, 2010 WL 3338697, at

*4 (N.D.N.Y. Aug. 24, 2010) (remanding where there was "no specific finding in the record by a physician regarding plaintiff's ability to sit and stand or walk").

I do not address the plaintiff's other arguments because "upon remand and after a *de novo* hearing, [the ALJ] shall review this matter in its entirety."[5] *Delgado*, 2018 WL 1316198, at *15. *See also Moreau v. Berryhill*, No. 3:17CV396 (JCH), 2018 WL 1316197, at *4 (D. Conn. Mar. 14, 2018) ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.")

IV. Conclusion

For these reasons, the plaintiff's motion to reverse and/or remand the Commissioner's decision (ECF #44) is granted and the defendant's motion to affirm the decision of the Commissioner (ECF #52) is denied. The case is remanded for further proceedings.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:	Hartford, Connecticut
	January 6, 2020

---

[5]Remand moots one of the plaintiff's arguments. The plaintiff contends that under *Lucia v. S.E.C.*, ––– U.S. ––––, 138 S. Ct. 2044 (2018), he is entitled to a new hearing because the ALJ was not properly appointed under Article II, Section 2, Clause 2 of the United States Constitution (the "Appointments Clause"). In July 2018, the Commissioner ratified the appointments of Social Security ALJs and "approved those appointments as her own." SSR 19-1P, 2019 WL 1324866, at *2. As a result, the ALJ hearing the plaintiff's case on remand will have been properly appointed.